**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE-OPELOUSAS DIVISION**

| | | |
|---|---|---|
| GAYLE A. WATSON | * | CIVIL ACTION NO. 07-1776 |
| VERSUS | * | JUDGE DOHERTY |
| COMMISSIONER OF SOCIAL SECURITY | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Gayle A. Watson, born December 17, 1953, filed an application for supplemental security income payments on March 3, 2003, alleging disability as of June 24, 2003, due to back and knee problems.[1] After exhausting administrative relief, claimant filed for judicial review with this Court under Docket No. 06-0294, on February 16, 2006.

On November 9, 2006, the undersigned issued a Report and Recommendation recommending that this case be remanded to the hearing level with instructions to the Administrative Law Judge to evaluate the opinions of claimant's treating physicians under *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001), and *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000), as well as to consider the side effects from claimant's medications.

---

[1]The ALJ agreed to move the onset date to reflect the date in claimant's prior application. [Tr. 385-88, 391].

[Tr. 237-249]. Judge Richard T. Haik, Sr. entered a Judgment adopting the Report and Recommendation on January 30, 2007. [Tr. 250-51].

On February 16, 2007, the Appeals Council issued a "Notice of Order of Appeals Council Remanding Case to Administrative Law Judge" for further administrative proceedings consistent with the order of this Court. (Tr. 252-55). After a remand hearing, ALJ Kathleen Molinar issued an unfavorable decision on August 21, 2007. (Tr. 206-225). This appeal followed.

FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:[2]

**(1) Consultative Examination by Dr. R. Dale Bernauer dated May 30, 2007**. Claimant complained of back pain with left leg pain, bilateral knee pain, and

---

[2]Claimant's medical records were summarized in the previous decision under Docket No. 06-0294. Accordingly, only those records subsequent to the remand are summarized herein.

right shoulder pain. (Tr. 374). He said that he had been offered surgery by Dr. Cobb, but had refused. He was 5 feet 10 inches tall, and weighed 215 pounds. His blood pressure was 128/71. He had 25 pounds of grip strength on the right and 30 pounds on the left.

On examination, claimant came in bent over, walking using a cane with a limp on the right leg. Dr. Bernauer did not think that the cane was medically necessary.

Claimant's neck showed a full range of motion. His grip strength was strong, and his reflexes were 2+.

On back examination, claimant had 90 degrees of flexion, 30 degrees of extension, right flexion, and left flexion, negative straight leg raising, and 2+ reflexes. X-rays showed moderate degenerative changes.

Claimant's shoulders, elbows, and wrists had full range of motion. (Tr. 375). X-rays of the left shoulder showed some acromioclavicular arthritis.

Hip, ankle, and knee motion was full. X-rays of the right knee showed some intercondylar fragmentation.

Dr. Bernauer's main finding was that claimant had moderate degenerative changes in his back. He had some mild arthritic changes in the acromioclavicular joint, which Dr. Bernauer thought should not caused him any problems. Claimant had no arthritic changes in the knees, but had some intercondylar fragmentation, which

Dr. Bernauer stated should not cause him any pain. He opined that claimant should be able to work at a medium type work, lifting 25 to 50 pounds.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Bernauer determined that claimant could lift/carry up to 10 pounds frequently; lift up to 20 pounds frequently and carry up to 20 pounds occasionally; lift and carry up to 50 pounds occasionally, and never lift or carry more than 51 pounds. (Tr. 376). He opined that claimant could sit for four hours, and stand/walk for two hours at one time without interruption. (Tr. 377). He found that claimant could sit for 8 hours, stand for 6 hours, and walk for 4 hours out of an 8-hour workday. He noted that claimant used a cane to ambulate, but that it was not necessary.

Dr. Bernauer found that claimant could use his hands continuously over 2/3 of the time, but could push/pull only occasionally. (Tr. 378). He determined that claimant could use his feet to operate foot controls occasionally. He stated that claimant could frequently climb stairs and ramps, and occasionally perform all other postural activities. (Tr. 379). He reported that claimant had no environmental limitations. (Tr. 380). He checked that claimant was able to perform all daily activities. (Tr. 381).

4

**(2) Claimant's Administrative Hearing Testimony**. At the hearing on June 18, 2007, claimant was 53 years old. (Tr. 388). He was 5 feet 10 inches tall, and weighed about 215 pounds. He had gained about 25 pounds over the last three years.

Claimant stated that he had completed the eighth grade. (Tr. 389). He had a driver's license, and drove about three times a week. (Tr. 390). He had last worked in 1997 as a grain dryer. He had also worked as a floor hand in the oilfield. (Tr. 391).

Regarding complaints, claimant testified that he had back pain with burning in his leg and numbness on the left side. (Tr. 391). He stated that he was using a cane, which a "girl" gave to him. (Tr. 392). He said that none of his doctors had recommended that he use a cane, but he had problems for which the cane helped. He had trouble sleeping. (Tr. 395).

As to activities, claimant stated that he sat down and reclined for most of the day. He reported that he could lift and carry about 20 to 30 pounds, but not throughout the day. (Tr. 393, 400). He did some weeding and yard work. (Tr. 393).

Claimant prepared meals, did his laundry, and dressed and groomed himself. (Tr. 394). He also watched television.

Claimant testified that he was seeing a pain management doctor in Vidor, Texas for his medication. He stated that he had been going there for about eight or

5

nine months. (Tr. 396). He reported that his medications included Lorcet, Xanax, Soma, and a blood pressure fluid pill. Claimant testified that he had had side effects from Methadone, which he had taken before, but was not having any from his present medications. (Tr. 397).

Regarding restrictions, claimant testified that he could walk about three to four blocks, stand for about five minutes, and sit for about hour before having to take a break. He stated that he could use his hands to reach forward and overhead, and pick up small objects. (Tr. 397-98). He reported that he had trouble with changing positions. (Tr. 398). He complained that the cold hurt his knees.

**(3) Administrative Hearing Testimony of Richard Corbin, Vocational Expert ("VE")**. Mr. Corbin described claimant's past work as a deck hand as unskilled and heavy, and a grain dryer as unskilled and medium or heavy work. (Tr. 404). The ALJ posed a hypothetical in which she asked the VE to assume a claimant who was 53 years old and had an eight-grade education, and had past relevant work as a grain operator dryer and deck hand. In response, the VE testified that claimant could not return to past work as a grain dryer. (Tr. 405). He further stated that claimant had no transferable skills.

The ALJ changed the hypothetical to assume a claimant of the same background who could lift 20 pounds occasionally or 10 frequently; could walk,

6

stand, or sit six hours in an eight-hour day, and was taking Soma, Xanax, and Lorcet and, therefore, could not work around moving machinery, hazardous situations, heights, or balancing. In response, Mr. Corbin testified that claimant could work as a motel cleaner, of which there were 148,000 positions nationally and 1,360 statewide; school bus monitor, of which there were 11,000 jobs nationally and 124 statewide, and delivery truck driver, of which there were 131,000 jobs nationally and 2,165 statewide.

**(4) The ALJ's Findings**. Claimant argues that the ALJ erred in failing to comply with this Court's order, once again failing to give proper weight to the opinions of his treating physicians, resulting in an assessment of his RFC that was unsupported by the evidence, and an erroneous reliance upon the testimony of the vocational expert to find claimant not disabled at Step 5.

A review of the decision indicates that, as directed by this Court, ALJ Molinar specifically considered the elements for discounting the treating physicians' opinions, which are: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). (Tr. 209). In fact, she considered not only the evidence from claimant's most recent treating physicians, Drs. Stuart Phillips, Kenneth Adatto, John Watermeier, and Narayan

7

Madisetti, but also the records dating back to the inception of his treatment in 1996. (Tr. 212-220, 223). Additionally, ALJ Molinar considered the side effects from claimant's medications as the Court instructed.

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

Here, the ALJ stated that while she considered Dr. Phillips' and Dr. Adatto's opinions, they were not given controlling weight. (Tr. 214-15). In discounting their

8

findings, she applied the factors set forth by the Fifth Circuit in *Myers*, particularly as to Drs. Watermeier and Adatto's statements that claimant was permanently disabled, because she found that they were not supported by the record. (Tr. 214, 223). As to Dr. Phillips, she considered the length of claimant's treatment (three months), number of times he saw claimant (twice), the nature and extent of treatment (conservative), the support provided by other evidence (conflicting), and his specialty (orthopedics). (Tr. 213-216, 223-24, 333-34). She evaluated the same factors in discounting Dr. Adatto's opinion, noting that he saw claimant twice, treated claimant conservatively, and declared claimant disabled without any supporting evidence. (Tr. 214-15, 223-24, 330-32). Additionally, she considered these factors in examining the opinion of Dr. Watermeier, who saw claimant only one time and also found claimant to be totally and permanently disabled. (Tr. 215-16, 224, 328).

The ALJ did not accept any total and permanent disability determinations from these orthopedists, all of whom were affiliated with the same clinic. (Tr. 216). Among the opinions by treating doctors that have no special significance is a determination that an applicant is "disabled." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (citing 20 C.F.R. § 1527(e)(1)). These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner." *Id*.

Thus, the ALJ's decision to give no weight to these opinions as to disability is entitled to deference.

Additionally, claimant objects to the ALJ's giving greater weight to Dr. Bernauer's opinion than the treating physicians'. (Tr. 224). In doing so, the ALJ noted that Dr. Bernauer had seen claimant just before the hearing, was an orthopedic specialist, and had at least some of the prior records before him in giving his opinion. She also noted that claimant had not seen his treating orthopedists since 2003, or his pain management physician since 2005.

It is well established that "the ALJ has *sole* responsibility for determining a claimant's disability status." (emphasis added). *Newton*, 209 F.3d at 455 (citing *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)). Additionally , the ALJ is free to reject the opinion of any expert when the evidence supports a contrary conclusion. *Id*. Further, it is well established that conflicts in the evidence are for the Commissioner and not the courts to resolve. *Newton*, 209 F.3d at 452. As the opinion of claimant's treating physicians that claimant was totally and permanently disabled is contradicted by the most recent evidence, the ALJ's finding is entitled to deference.

Finally, the record reflects that the ALJ considered the side effects from claimant's medications as directed by this Court. Specifically, she cited the records from claimant's pain management physician, Dr. Madisetti, noting that claimant had

reported no side effects from his medications. (Tr. 150-168; 216). This finding is confirmed by Dr. Madisetti's reports. (Tr. 150-168). Further, the ALJ noted that while claimant had testified that he felt that the Methadone was a little too strong, he never made this complaint to Dr. Madisetti. (Tr. 223, 397). In fact, Dr. Madisetti reported that claimant functioned well with his medications. (Tr. 151, 155, 157, 164, 165, 217).

Additionally, the ALJ incorporated claimant's medications into the hypothetical to the vocational expert, specifically including Soma, Xanax and Lorcet, as well as restrictions regarding no working around moving machinery, no working around any type of hazardous situations, no heights, and no balancing. (Tr. 405). In response, the VE was still able to identify jobs that claimant could perform while taking those medications.

Further, the ALJ observed that claimant had testified that he had changed pain management doctors, but there are no records to confirm this. (Tr. 217). As the ALJ noted, even if claimant had begun seeing another doctor for pain management eight or nine months prior to the hearing as reported, then almost 18 months would have elapsed since he had stopped treatment with Dr. Madisetti. (Tr. 217). It is well established that the ALJ is not precluded from relying upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990);

*Chester v. Callahan*, 193 F.3d 10, 12 (1st Cir. 1999) (gaps in the medical record regarding treatment can constitute "evidence" for purposes of the disability determination); *McGuire v. Commissioner of Social Security*, 178 F.3d 1295 (6th Cir.1999) (gaps in treatment may reasonably be viewed as inconsistent with a claim of debilitating symptoms); *Franklin v. Sullivan*, 1993 WL 133774 (E.D. La. 1993); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) (failure to seek aggressive treatment and limited use of prescription medications is not suggestive of disabling condition). Thus, the ALJ's finding as is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS**

**REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION***, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this 4th day of November, 2008, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE